IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 5, 2002

**STATE OF TENNESSEE v. KIMBERLY DAWN FRENCH**

**Direct Appeal from the Circuit Court for Henry County**
**No. 13077     Julian P. Guinn, Judge**

---

**No. W2001-01502-CCA-R3-CD - Filed March 11, 2002**

---

A Henry County jury convicted the Defendant of one count of introducing drugs into a penal institution. The Defendant now appeals, challenging the sufficiency of the convicting evidence. After reviewing the record, we conclude that the evidence is sufficient to support the conviction and therefore affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Victoria L. DiBonaventura, Paris, Tennessee, for the Appellant, Kimberly Dawn French.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; G. Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Henry County Grand Jury indicted the Defendant, Kimberly Dawn French, for introducing 11.8 grams of marijuana into the Henry County Jail on August 27, 2000, in violation of Tennessee Code Annotated § 39-16-201(a)(1). Following a jury trial, the Defendant was convicted as charged, and the trial court imposed a sentence of three years, with one year of continuous confinement followed by two years of Community Correction supervision. The Defendant now appeals and challenges the sufficiency of the convicting evidence. We conclude that the evidence is sufficient and affirm the judgment of the trial court.

I.  FACTS

Gary Dicus testified that he is a lieutenant with the Henry County Sheriff's Department and that he was the head jailer at the Henry County Jail on August 27, 2000. Lieutenant Dicus testified

that on August 27, 2000, Jessie Polanki was an inmate in the Henry County Jail and had been an inmate there for several months. Lt. Dicus testified that Jessie Polanki and the Defendant had lived together and that they had a child. Lt. Dicus further testified that the Defendant visited inmate Polanki on a weekly basis. He stated that on August 27, 2000, the Defendant visited Jessie Polanki from 3:00 p.m. to 4:00 p.m. Lt. Dicus described the procedure for visitation at the Henry County Jail, which involves no actual physical contact between the visitors and the inmates. Lt. Dicus testified that articles such as toilet articles and some articles of clothing may be brought in to the inmates on visitation day, with the general rule being that any package containing articles for the inmate is given to the jailer before the inmate is brought out. The jailer inspects the package during the visit and gives the package to the inmate after the visit.

Lt. Dicus testified that on August 27, the Defendant brought to the jail some shampoo, writing paper, envelopes, ball point pens, and "maybe another article or two," but he stated that the Defendant did not offer the package to the jailers when she first came in for the visit. Lt. Dicus testified that the Defendant waited until the visit was over and then brought the items to Lt. Dicus as she was leaving. Lt. Dicus explained that the Defendant kept the items with her during her visit with Polanki and he stated that the articles had apparently come from Wal-Mart as they were in a Wal-Mart bag. After the Defendant left, Lt. Dicus and Officer Adam Jenkins inspected the items brought for Polanki by the Defendant and discovered a "leafy green substance" inside the pens. Rolling papers were also discovered in one of the pens. Based on his law enforcement experience, Lt. Dicus believed that the leafy green substance was marijuana.

Adam Jenkins, a deputy jailer at the Henry County Jail testified that on August 27, 2000 he saw the Defendant and stated that he had also seen her prior to that day when she had been to the jail to visit Mr. Polanki. Officer Jenkins testified that when the Defendant visited Polanki on August 27, 2000, the Defendant brought a Wal-Mart bag, and she kept the bag during the visit. Following the visit, the Defendant gave the bag to Officer Jenkins and Lt. Dicus, who inspected its contents after the Defendant left. Officer Jenkins testified that on prior occasions the Defendant had brought items for Polanki when she came to visit and that she had given them to the jailers prior to her actually visiting Polanki.

Dana Clement testified that she is a special agent in the forensic science division of the Tennessee Bureau of Investigation. Agent Clement analyzed the green plant material found by the Henry County jailers in the pens brought to Polanki by the Defendant and determined that the material consisted of 11.8 grams of marijuana, a controlled substance.

Stanley Pinson testified that he is a sergeant with the Henry County Sheriff's Department and that he knew the Defendant and her boyfriend, Jessie Polanki. Sergeant Pinson also knew where the Defendant resided in Henry County. Sgt. Pinson was on duty at the jail on the day of the incident and was involved in taking the pens apart and discovering the marijuana in the pens. Sgt. Pinson instructed another officer to prepare warrants against the Defendant for introduction of contraband into the jail. Sgt. Pinson testified that he drove to the Defendant's house and saw her red car in the driveway. When he knocked on the door, he heard movement in the house, but no one answered the

door.  He then used a cellular phone to call the Defendant and told her that he was outside.  The Defendant responded that she knew he was outside and that she would open the door.  Sgt. Pinson testified that at about that time, Officer Archie arrived, and the Defendant opened the door and began crying.  Sgt. Pinson testified that he observed on a table in the Defendant's home several packages of Bic ink pens, similar to the pens the Defendant had brought to the jail.  During cross-examination, Sgt. Pinson testified that he also saw some "very small flakes of green leafy substance" on the Defendant's table.

William Archie testified that Sgt. Pinson was his superior officer with the Henry County Sheriff's Department, and that he met Sgt. Pinson at the Defendant's residence.  Officer Archie testified that prior to their arrival at the Defendant's home he had obtained arrest warrants against the Defendant and that he and Sgt. Pinson executed the warrants upon the Defendant.  Archie testified that he saw five or six Bic pens on the dining room table at the Defendant's home.  Officer Archie also testified that he discovered a "residue of a green plant material," which he recovered from the scene.

The Defendant testified that Jessie Polanki is the father of her ten-month-old child.  She testified that she had known Polanki for about a year and a half and that she visited him in jail on August 27, 2000.  The Defendant testified that earlier that day, an unknown person contacted her by telephone and said that "they had some things for Jessie and was wondering if [the Defendant] was going to see him."  Because the Defendant had to leave immediately to take her mother to Dickson, Tennessee, she told this unknown person to leave the items on her front porch or somewhere at the house and that she would get them.

 The Defendant stated that when she returned from Dickson, she picked up the bag that the unknown person had left and put it in her car.  She stated that she took this bag, along with other items for Polanki, to the jail when she went to visit him.  According to the Defendant, after visiting with Polanki, she handed the items to Lt. Dicus and Sgt. Jenkins, who then "went through everything."  The Defendant stated that she waited while the officers inspected the items and that she then left.  The Defendant denied knowing that marijuana was in the pens.  She testified that she got the pens at a flea market in Huntingdon, Tennessee a week or two before the date of her arrest.

## II.  ANALYSIS

The Defendant argues that insufficient evidence was presented at trial to convict her of introducing drugs into a penal institution.  When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

The Defendant was charged with and convicted of introducing drugs into a penal institution where prisoners are quartered, which is defined as follows:
It is unlawful for any person to:
. . . [k]nowingly and with unlawful intent to take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision . . . any controlled substances found in Chapter 17, part 4 of this title.
Tenn. Code. Ann. § 39-16-201(a)(1). The Defendant argues on appeal that insufficient evidence was presented to prove that the Defendant knew that marijuana was inside the Bic pens that she brought into the Henry County Jail.

Viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to support the Defendant's conviction. Lt. Dicus and Officer Jenkins inspected the items brought into the jail by the Defendant for inmate Polanki and discovered marijuana inside the pens. They also discovered rolling papers in one of the pens. Sgt. Pinson's description of the Defendant's behavior at the time of her arrest provided evidence from which the jury could infer that the Defendant knew that marijuana was hidden in the pens. Although the Defendant testified that the pens containing the marijuana were supplied to her by an unknown person and that she was unaware that marijuana was hidden in the pens when she took them to the Henry County Jail, the jury clearly did not believe this portion of the Defendant's testimony. The jury instead accredited the testimony of the State's witnesses. It is not the function of this Court to substitute our judgment for the judgment of the jury insofar as issues concerning the credibility of witnesses and the weight and value of the evidence are concerned.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE

-4-