**John C. LONG, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9692.**

District of Columbia Court of Appeals.

Argued Aug. 10, 1976.

Decided Oct. 20, 1976.

---

Kenneth Shepherd, Washington, D.C., appointed by this court, for appellant.

Peter E. George, Asst. U.S. Atty., Washington, D.C., with whom Earl J. Silbert, U.S. Atty., John A. Terry, William D. Pease and Roger C. Spaeder, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before KERN and HARRIS, Associate Judges, and HOOD, Chief Judge, Retired.

**KERN, Associate Judge:**

Appellant was convicted after trial by jury of felony murder as well as attempted robbery while armed, assault with intent to kill while armed and carrying an unlicensed pistol.[1] The government presented, among others, three eyewitnesses to the shooting which occurred during an attempted robbery of a gas station. Their testimony was:

Otis Todd, an employee of the gas station on duty in the early afternoon of an August Saturday, witnessed appellant and another enter the station and order the manager to get in the backroom; he then saw appellant, who was standing very close to the manager, move his hand and "that is when the gun went off" and the manager was killed; and, when Todd sought to escape, appellant shot him in the neck.[2]

Kenneth Ray, who pleaded guilty to voluntary manslaughter in this case, recounted that he had accompanied appellant to the gas station to rob it; when they entered and announced the holdup appellant had been carrying a pistol; and, appellant had

---

1. The trial court upon motion by the government dismissed a count of first-degree murder contained in the indictment against appellant.

2. Other government witnesses confirmed by their testimony hearing shots and seeing two men (one with a pistol) run from the station and jump into an automobile.

first shot the decedent while trying to shove him into the back of the station and then had wounded Todd before they fled the scene.[3]

Joseph Jones relates that he, Ray and appellant had "cased" the station and then while he remained in his car[4] appellant, armed with a Rossi revolver, and Ray had approached the station; he heard shots and immediately thereafter the two came running and jumped into the car with appellant still carrying the gun; and, the three then drove to his apartment and he took back the gun from appellant and eventually destroyed it.

Appellant was the only defense witness in the face of the evidence amassed by the government and he denied even being at the scene of the crime, much less perpetrating it. Thus, the case went to the jury on the prosecution theory that appellant was the triggerman during a robbery attempt and the defense theory that the eyewitnesses whose testimony implicated appellant had been mistaken or lying[5] because he did not participate at all in the crime.

The sole issue on appeal is whether the trial court's supplemental instruction to the jury in response to a question submitted during its deliberation, *viz.*, "Your Honor, if we find that the defendant [appellant] did not have possession of the gun, would it be possible to find him guilty of felony murder or any of the other armed offenses as stated in the indictment?", was erroneous and hence requires a retrial of this case. The trial court refused, despite urging by defense counsel, to answer "No" to

the jury's question; rather, the court decided not to inject into the case at that time the issue of aiding and abetting which had not been raised at trial. Instead, the court merely reinstructed on credibility of witnesses generally and the duty of the jury to determine credibility and resolve conflicts in the evidence.

■ Appellant contends first that the judge was bound, in light of the evidence presented by the three eyewitnesses to the murder that he had been the "triggerman," to answer the jury's question in the negative. In short, as appellant sees the case, the jury should have been instructed by the judge in her supplemental instruction that it had under the evidence only an "either-or" choice: either it could convict appellant as the principal or must acquit appellant if the evidence did not prove beyond a reasonable doubt that *he* had been the triggerman. The answer appellant urges, however, would have been an incorrect statement of law since even if he had not carried the pistol during the attempted robbery and murder, he could have been convicted upon the evidence as a principal, as distinguished from an aider and abettor. *Hazel v. United States*, D.C.App., 353 A.2d 280 (1976).

But appellant also argues that even if the court was correct in refusing to answer "No" to the jury's question, the court still erred in failing to give to the jury a supplemental instruction "of relevant legal principle on the theories of aiding and abetting, accessory or accomplice . . . because the convictions may have been based . . . on the jury's lay notions

3. An expert witness testified that both the bullet that killed the service station manager and the bullet that wounded Todd came from a .38 caliber Brazilian Rossi revolver.

4. There was testimony by a government witness that he had seen a car travelling at high speed sideswipe an auto parked in front of his house at about the time of the shootings, and there was expert testimony that the paint left on the parked vehicle matched the paint of the getaway car driven by Jones.

5. The cross-examination conducted by defense counsel at trial revealed that Todd had failed to identify appellant at a lineup held six months after the shooting (but there was evidence that he had gained by then some 25 pounds) ; Ray had negotiated with the government prior to trial concerning his plea and his treatment pending sentence; and, Jones, a government informant in the narcotics trade, had given false statements to a government agent after the shooting and perjured himself before the Grand Jury.

of the law regarding aiding and abetting, accessory or accomplice theories . . . [which] may have been totally or partially mistaken and erroneous."

■ Appellant cites in support of this argument *United States v. Bolden*, 169 U. S.App.D.C. 60, 514 F.2d 1301 (1975), where the federal circuit court reversed a felony-murder conviction because the trial court failed to "carefully inform the jury of the law" when it had submitted to the court an inquiry after the charge and during deliberation.[6] There, however, unlike the instant case, the defense had argued at trial that the intent to rob was formed *after* the shooting of the decedent; and the appellate court noted that a "difficult legal issue" of intent was the subject of the jury's inquiry and there was some evidence to support the defense theory. Accordingly, an explication of the law by the trial court relevant to the requisite intent for conviction of felony murder was essential under these circumstances. In contrast, the instant case presents no issue concerning the possibility of "mere coincidence" in time and place between the killing and the commission of the robbery, *see United States v. Heinlein*, 160 U.S.App.D.C. 157, 167, 490 F.2d 725, 735 (1973); there was neither evidence adduced nor argument presented by appellant that the robbery was an afterthought to the murder of the decedent or "that the homicidal act fell outside the scope of the felonious crime which the parties undertook to commit", *United States v. Heinlein, supra* at 169, 490 F.2d at 737, and hence, the felony-murder rule was inapplicable.

We conclude under the particular circumstances the trial court's treatment of the jury's question was proper and the conviction must be and is

*Affirmed.*

---

6. In *Bolden, supra* 169 U.S.App.D.C. at 67, 514 F.2d at 1308, the jury after deliberating for a time had asked, among other questions, "If it is determined that a robbery was in fact committed, does this *necessarily* imply

previous *intent* to commit a robbery?" (Emphasis in original.)