IN THE SUPREME COURT OF TENNESSEE
AT JACKSON

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | FILED: June 28, 1999 |
| Appellee, | ) | |
| | ) | SHELBY CRIMINAL |
| v. | ) | Hon. Arthur T. Bennett, Judge |
| | ) | |
| STEVEN B. BUGGS | ) | No. 02S01-9803-CR-00020 |
| | ) | |
| Appellant | ) | (Felony Murder) |
| | ) | |

FILED

June 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | |
|---|---|
| For the Appellant: | For the Appellee: |
| | |
| A. C. Wharton | John Knox Walkup |
| District Public Defender | Attorney General and Reporter |
| | |
| | Michael E. Moore |
| | Solicitor General |
| W. Mark Ward | |
| Asst. Public Defender | |
| Memphis, Tennessee | Daryl J. Brand |
| | Assistant Attorney General |

**OPINION**

| | |
|---|---|
| AFFIRMED | BARKER, J. |

**OPINION**

This is an appeal by the defendant from the judgment of the intermediate appellate court affirming his conviction for felony murder in the perpetration of a robbery. The sole issue is whether the evidence was sufficient to establish intent to commit robbery at the time of the murder.

The defendant contends that the evidence does not support a finding that he intended to rob the victim, Karen Beasley, at the time he killed her. Instead, he asserts that his taking of Ms. Beasley's money occurred as an "afterthought," and that the evidence was therefore insufficient to support a conviction for felony murder. We conclude that the evidence presented at trial was sufficient to support a finding that the defendant killed Ms. Beasley because she stood in his way of retrieving money from their joint funds to buy cocaine. The use of force and violence to take the property of another which results in the death of the victim, whether or not that death was originally intended, will support a conviction of felony murder in the perpetration of robbery. Accordingly, we affirm the conviction.

**BACKGROUND**

The defendant and Ms. Beasley, lived together in a duplex located at 2425 Shasta Street in Memphis. Both were employed as certified nursing assistants at the Overton Park Health Care Center, a nursing home.

On June 21, 1994, the defendant and Ms. Beasley received their biweekly paychecks from the nursing home. The defendant testified that the amount of his paycheck was approximately $500.00; Ms. Beasley's paycheck amounted to approximately $270.00. After work, they cashed their checks, and the defendant gave Ms. Beasley $150.00 towards his share of the living expenses. Before going home, they paid an unspecified amount on Ms. Beasley's car note and bought a tire for her

2

car. They also stopped by the defendant's sister's house where the defendant gave his sister an unspecified amount of money. From there, they stopped by Ms. Beasley's mother's house to visit with Ms. Beasley's children before returning home.

While Ms. Beasley left to run some errands, the defendant stayed at home drinking beer and smoking marijuana. When solicited by a drug dealer, he purchased a $25.00 rock of crack cocaine. After Ms. Beasley returned home, they agreed that the defendant would go out and purchase fried chicken for dinner. The defendant took Ms. Beasley's car. He did not return home until over five hours later, at approximately 11:30 p.m. or 12:00 a.m.

During the time the defendant was gone, he associated with a prostitute and spent $150.00 on crack cocaine and a substance he referred to as "ice." When he ran out of drugs, he returned home. According to him, his purpose in returning home was to get money to purchase more cocaine.

Not surprisingly, when the defendant returned home five hours late and without fried chicken, there was a confrontation between him and Ms. Beasley. He did not specify the subject matter of Ms. Beasley's ire. However, he admitted that during the confrontation he "snapped." He went into the kitchen and obtained a "big" knife, then stabbed Ms. Beasley with the knife until she stopped resisting.[1] After washing the blood from his hands and changing clothes, the defendant went back into the bedroom where his and Ms. Beasley's remaining cash was located. He took all of the money and left the apartment, proceeding to purchase and use cocaine for the rest of the night.

---

[1]The medical examiner testified that Ms. Beasley was stabbed multiple times in the chest and back, with defensive wounds to her knees and hands.

The next morning, the defendant returned to the house. To prevent anyone from looking inside and seeing Ms. Beasley's body, he dragged the body into a hallway. He then gathered his clothes, along with several items belonging to Ms. Beasley, including two (2) television sets, a hair dryer, and a lamp. Using Ms. Beasley's car, the defendant drove to the American Loan Pawn Shop in Memphis, where he pawned the two (2) televisions. The next day, he pawned the hair dryer and the lamp. With the money he received from the pawned items, the defendant bought and smoked more crack cocaine. Realizing that he would have to leave Memphis to avoid arrest for Ms. Beasley's murder, the defendant drove Ms. Beasley's car, first to Victoria, Mississippi, and later to Milwaukee, Wisconsin, where he stayed with an aunt. The defendant was ultimately arrested at his aunt's house in Milwaukee.

Two competency and sanity evaluations were conducted upon the defendant by Dr. Wyatt Nichols, a clinical psychologist with the Midtown Mental Health Center in Memphis. Based upon what the defendant told Dr. Nichols about his use of cocaine on the night of the murder, Dr. Nichols concluded that the defendant's judgment and ability to understand the consequences of what he was doing were impaired at the time of the murder. Nevertheless, Dr. Nichols concluded that this impairment did not rise to the level of legal insanity. He found that the defendant was sane at the time of the offense and competent to stand trial.

At the conclusion of the evidence, the jury received the following instruction concerning the evidence necessary to convict for murder committed in the perpetration of a robbery:

> Any person who commits murder in the perpetration of a robbery is guilty of a crime.
>
> For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

4

(1) that the defendant unlawfully killed the alleged victim; and

(2) that the killing was committed in the perpetration of or the attempt to perpetrate the alleged robbery; that is, that the killing was closely connected to the alleged robbery and was not a separate, distinct and independent event; and

(3) that the defendant intended to commit the alleged robbery; and

(4) that the killing was the result of a reckless act by the defendant.

Robbery was defined in the instructions as well:

Any person who commits the offense of robbery is guilty of a crime.

For you to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the existence of the following essential elements:

(1) that the defendant knowingly obtained or exercised control over property owned by Karen D. Beasley; and

(2) that the defendant did not have the owner's effective consent; and

(3) that the defendant intended to deprive the owner of the property; and

(4) that the defendant took such property from the person of another by the use of violence or by putting the person in fear; and

(5) that the defendant took such property intentionally or knowingly.

Following the jury's deliberation, the defendant was convicted of felony murder and was sentenced to life imprisonment without the possibility of parole. We affirm.

## DISCUSSION

The defendant challenges the sufficiency of the evidence to support the conviction of felony murder. Specifically, he alleges that there is no evidence to support a finding that he formed the intent to rob prior to, or concurrent with, the

5

murder. He alleges that without such proof, a conviction of felony murder cannot be sustained. He also argues that because the jury did not receive a specific instruction that a killing is not "in the perpetration of" a robbery if the design to steal is first formulated after the homicide, the jurors were deprived of an opportunity to reach a decision on the merits of the substantive question, a fundamental error requiring reversal of his conviction.

When the sufficiency of the evidence is challenged, the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89, 61 L. Ed. 2d 560 (1979); State v. Burns, 979 S.W.2d 276, 286-87 (Tenn. 1998); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). In determining the sufficiency of the evidence, this Court does not reweigh the evidence, id., or substitute its inferences for those drawn by the trier of fact. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the witnesses for the State, and a presumption of guilt replaces the presumption of innocence. Burns, 979 S.W.2d at 287; State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the appellant bears the burden of proving that the evidence is insufficient to support the jury verdict. State v. Pike, 978 S.W.2d 904, 914 (Tenn. 1998); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The statute under which the defendant was convicted defined felony murder as "a reckless killing of another committed in the perpetration of, or attempt to perpetrate

any . . . robbery . . . ." Tenn. Code Ann. § 39-13-202(a)(2)(1991).[2] The key question in this case is the meaning of the phrase "in the perpetration of."

This Court has previously given guidance regarding the meaning of this phrase. In Farmer v. State, 201 Tenn. 107, 296 S.W.2d 879 (1956), the Court said that in order for an offense to constitute first-degree murder under the felony-murder rule,

> it must have been done in pursuance of the unlawful act, and not collateral to it. In other words, "[t]he killing must have had an intimate relation and close connection with the felony . . . , and not be separate, distinct, and independent from it . . . . "

Id., 201 Tenn. at 115-16, 296 S.W.2d at 883 (quoting Wharton on Homicide, § 126 (3rd ed.)) The Court also suggested that there should be a causal connection between the killing and the felony. Farmer, 201 Tenn. at 117, 296 S.W.2d at 884; accord, State v. Severs, 759 S.W.2d 935, 938 (Tenn. Crim. App. 1988) (killing that resulted when the intended robbery victim shot the defendant's accomplice was done not in pursuance of the unlawful act, but rather to thwart it; conviction of felony murder reversed).

Other authorities have defined "in the perpetration of" as inclusive of situations where the homicide is so closely connected with the underlying felony as to be within the res gestae thereof, or where the homicide is so linked to the felony as to form one continuous transaction. See 40 Am. Jur. 2d (Homicide) § 67 (1999), and authorities cited therein. Under this theory, where there is a break in the chain of events between the felony and the killing, the homicide will not fall within the felony-murder doctrine.

Tennessee cases applying these concepts have noted that consideration of such factors as time, place, and causation is helpful in determining whether a murder

---

[2]This statute was amended effective July 1, 1995, to remove the element of reckless intent.

was committed "in the perpetration of" a particular felony. See State v. Lee, 969 S.W.2d 414, 416 (Tenn. Crim. App. 1997) (where victim was killed in a collision that followed a high-speed chase as defendant fled from the scene of a robbery, the homicide occurred in the furtherance of the robbery; flight from the scene of a crime is an integral part of the crime); State v. Brown, 756 S.W.2d 700, 702-03 (Tenn. Crim. App. 1988) (fact that robbery was complete before the victim was killed did not make the murder "collateral" to the robbery where defendant picked up the victim with the intent of robbing him and killed him to prevent identification).

The law does not require that the felony necessarily precede the murder in order to support a felony-murder conviction. The killing may precede, coincide with, or follow the felony and still be considered as occurring "in the perpetration of" the felony offense, so long as there is a connection in time, place, and continuity of action. Where the killing precedes the commission of the felony, however, there is a split of authority between the various jurisdictions as to whether intent to commit the felony must exist concurrent with the commission of the homicide, or whether intent formed after a killing is nonetheless sufficient to bring a case within the felony-murder rule. See generally 40 C.J.S. Homicide §§ 47 & 53 (1991 ed. & 1998 Supp.).

The prevailing view is that in order for the felony-murder doctrine to be invoked, the actor must intend to commit the underlying felony at the time the killing occurs; there is no felony-murder where the felony occurs as an afterthought following the killing. United States v. Bolden, 514 F.2d 1301, 1307 (D.C. Cir. 1975); Ex parte Johnson, 620 So.2d 709, 713 (Ala. 1993); Grigsby v. State, 542 S.W.2d 275, 280-81 (Ark. 1976); People v. Ainsworth, 755 P.2d 1017, 1037 (Cal. 1988); Long v. United States, 364 A.2d 1174, 1177 (D.C. Ct. App. 1976); People v. Brannon, 486 N.W.2d 83, 85-86 (Mich. App. 1992), app. denied, 495 N.W.2d 384 (Mich. 1992); State v. Newman, 605 S.W.2d 781, 787 (Mo. 1980); State v. Montgomery, 215 N.W.2d 881,

8

883 (Neb. 1974); People v. Joyner, 257 N.E.2d 26, 27 (N.Y. 1970); Commonwealth v. Legg, 417 A.2d 1152, 1154 (Pa. 1980); Robertson v. State, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); Bouwkamp v. State, 833 P.2d 486, 492 (Wyo. 1992); But see Hightower v. State, 901 P.2d 397, 402 (Wyo. 1995).

The rationale for the felony-murder rule underlies the requirement of intent in the above jurisdictions. As we stated in State v. Kimbrough, 924 S.W.2d 888 (Tenn. 1996):

> One of the original purposes of the felony-murder rule was to deter the commission of certain felonies in a dangerous or violent way. 2 Charles E. Torcia, Wharton's Criminal Law § 147 at 300-01 (15th ed. 1994). Felony murder differs from other forms of murder because it holds the actor strictly accountable even where the killing is unintended. Id. at 300.
>
> > In the typical case of felony murder, there is no malice in "fact" with respect to the homicide; the malice is supplied by the "law". There is an intended felony and an unintended homicide. The malice which plays a part in the commission of the felony is transferred by the law to the homicide. As a result of the fictional transfer, the homicide is deemed committed with malice. Id. at 296.

Kimbrough, 924 S.W.2d at 890. If an accused had no intent to commit the underlying felony at the time of the killing, the basis for the felony-murder rule does not apply.

A minority of jurisdictions, however, hold that a killing will constitute felony murder even if the intent to commit the underlying felony arises after the murderous act, if there is a continuity of action so as to constitute one continuous transaction. See Higginbotham v. State, 655 A.2d 1282, 1288 (Md. App. 1995), cert. denied, 664 A.2d 886 (Md. 1995); State v. Williams, 660 N.E.2d 724, 732-33 (Ohio 1996); Perry v. State, 853 P.2d 198, 200 (Okla. Crim. App. 1993). These latter cases tend to apply a res gestae theory; if the act causing death is "part and parcel" of the same occurrence or episode as the felony, then a felony-murder conviction is justified. Particularly with respect to robbery-murder, if the act causing the death of the victim also constituted

9

the element of force in the robbery, then the act of murder is considered a part of the underlying felony. Higginbotham, 644 A.2d at 1288.

We agree with the majority position. Given the fact that the felony-murder rule is a legal fiction in which the intent and the malice to commit the underlying felony is "transferred" to elevate an unintentional killing to first-degree murder, we are reluctant to extend the doctrine to include cases in which there was no intent to commit the felony at the time of the killing. Thus, in a felony-murder case, intent to commit the underlying felony must exist prior to or concurrent with the commission of the act causing the death of the victim.

Proof that such intent to commit the underlying felony existed before, or concurrent with, the act of killing is a question of fact to be decided by the jury after consideration of all the facts and circumstances. Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Holland, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). In Mullendore v. State, 183 Tenn. 53, 191 S.W.2d 149 (1945), this Court addressed the question of proof of intent in a robbery-murder case. Quoting Wharton on Homicide § 188 (3rd ed.), the Court held that:

> evidence that a person took the property of another after killing him and appropriated it to his own use, is sufficient to sustain a conviction of murder in an attempt to commit a robbery, though no previous purpose to rob appears, since his act raises a strong presumption that he intended to do what he afterwards voluntarily did.

Id., 183 Tenn. at 63, 191 S.W.2d at 152.

To the extent that Mullendore stands for the proposition that intent to commit a felony may be presumed from the act of committing that felony, it is overruled. Intent cannot be presumed, because such a presumption would impermissibly shift the burden of proof. Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979); State v. Martin, 702 S.W.2d 560, 564 (Tenn. 1985). Nonetheless,

10

<u>Mullendore</u> still stands for the proposition that a jury may reasonably infer from a defendant's actions immediately after a killing that the defendant had the intent to commit the felony prior to, or concurrent with, the killing. <u>State v. Addison</u>, 973 S.W.2d 260, 266 (Tenn. Crim. App. 1997), <u>perm. app. denied</u> (Tenn. 1998). <u>See also</u> <u>State v. Johnson</u>, 661 S.W.2d 854, 861 (Tenn. 1983); <u>Holland</u>, 860 S.W.2d at 59.[3]

Applying these principles to the facts in this case, we find considerable evidence from which the jury could rationally infer that the murder of Ms. Beasley was committed in the perpetration of a robbery. The defendant returned home for the express purpose of obtaining more money to buy cocaine. When Ms. Beasley attempted to thwart this purpose, he stabbed her until she no longer resisted. He then

---

[3]The principle in robbery-murder cases that the intent to rob may be inferred from a defendant's actions immediately following a killing, is one that is generally accepted. <u>See</u> e.g., <u>Hoke v. Netherland</u>, 92 F.3d 1350, 1363 (4th Cir. 1996), <u>cert. denied</u>, ___ U.S. ___, 117 S. Ct. 630 (1996) (defendant killed the victim, then took drugs from her possession; jury entitled to infer that killing was in perpetration of robbery); <u>Savino v. Murray</u>, 82 F.3d 593, 601 (4th Cir. 1996), <u>cert. denied</u>, 518 U.S. 1036, 117 S. Ct. 1 (1996) (motivated by a desire for cocaine, defendant killed victim, then took victim's cash; jury entitled to infer that killing was in perpetration of robbery); <u>Tafero v Wainwright</u>, 796 F.2d 1314, 1319 (11th Cir. 1986), <u>cert. denied</u>, 483 U.S. 1033, 107 S. Ct. 3277 (1987) (defendant asleep in his car, when roused by police officer, shot and killed officer, then fled in officer's patrol car; jury entitled to infer that killing was in perpetration of robbery); <u>Ex parte Johnson</u>, 620 So.2d at 714 (Ala. 1993) (defendant beat one victim to unconsciousness, took cash from another victim, then set house on fire, killing first victim; jury entitled to infer that killing of first victim was in perpetration of robbery of second victim); <u>Gaddy v. State</u>, 698 So.2d 1100, 1134 (Ala. Crim. App. 1995), <u>aff'd</u>, 698 So.2d 1150 (Ala. 1997) (defendant stabbed victim to death, then took cash and various personal items from the victim's home; jury entitled to infer that killing was in perpetration of robbery); <u>Cleveland v. State</u>, 865 S.W.2d 285, 288 (Ark. 1993), <u>judgment vacated on other grounds</u>, 511 U.S. 1080, 114 S. Ct. 1828 (1994) (defendant shot and killed clerk at convenience store, took a hostage to his car, then returned inside the store and took cash box; jury entitled to infer that killing was in perpetration of robbery of store); <u>Jackson v. State</u>, 597 N.E.2d 950, 960 (Ind. 1992), <u>cert. denied</u>, 507 U.S. 976, 113 S. Ct. 1414 (1993) (victim kidnapped and killed; within minutes of the killing, victim's car was used to commit bank robbery; jury entitled to infer that killing of victim was in perpetration of bank robbery); <u>Mahone v. State</u>, 541 N.E.2d 278, 280 (Ind. 1989) (drunken defendant shot and stabbed two victims to death during altercation, then took videocassette recorder and television from victim's home; jury entitled to infer that killing was in perpetration of robbery); <u>People v. Brannon</u>, 486 N.W.2d at 86 (Mich. App.) (defendant stabbed victim to death, then took victim's wallet from her purse; jury entitled to infer that killing was in perpetration of robbery); <u>People v. Goddard</u>, 352 N.W.2d 367, 371 (Mich. App. 1984), <u>rev'd on other grounds</u>, 418 N.W.2d 881 (Mich. 1988) (defendant shot and killed victim outside victim's home, then broke into the home and stole various items belonging to the victim; jury entitled to infer that killing was in perpetration of robbery); <u>People v. Joyner</u>, 257 N.E.2d at 27 (defendant stabbed victim, then took money from victim's pockets; jury entitled to infer that killing was in perpetration of robbery); <u>Legg</u>, 417 A.2d at 1155, n. 4 (defendant stabbed victim in the back, killing him, then took the victim's wallet, keys, money and automobile; jury entitled to infer that killing was in perpetration of robbery); <u>Robertson v. State</u>, 871 S.W.2d at 705-06 (defendant killed first victim outside victim's home, went inside the home and killed second victim, then ransacked the house, stealing various items of personal property and second victim's car; jury entitled to infer that killing was in perpetration of robbery); <u>Nelson v. State</u>, 848 S.W.2d 126, 131-32 (Tex. Crim. App. 1992), <u>cert. denied</u>, 510 U.S. 30, 114 S. Ct. 100 (1993) (defendant beat and stabbed victim to death, then took items of personal property from victim's home; jury entitled to infer that killing was in perpetration of robbery); <u>Bouwkamp</u>, 833 P.2d at 492 (defendant beat victim to death, stripped victim's body, and removed items of personal property from the victim's clothes before burning them; jury entitled to infer that killing was in perpetration of robbery).

proceeded to fulfill his original purpose; he went into a drawer in the bedroom where he removed all the cash that remained of his and Ms. Beasley's paychecks.[4] He took that cash and went back to the crack house, where he spent the remainder of the night smoking crack cocaine and consorting with a prostitute. The sad truth which can be reasonably gleaned from the defendant's own confession is that he was desperate for funds to buy more cocaine and willing to do anything to get it, including killing Ms. Beasley. Such a scenario as occurred here clearly supports a conviction of murder in the perpetration of a robbery.[5]

The defendant suggests that the trial court's failure to specifically instruct the jury that a killing is not "in the perpetration of" a robbery if the design to steal is not conceived until after the homicide, is plain error requiring reversal of his conviction. We note that the defendant did not specifically request such an instruction; neither did he raise this issue before the Court of Criminal Appeals. Therefore, this issue has been technically waived. Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a).

We choose, however, to address this issue on the merits. Initially, we note that the jury instruction given this jury on the elements of felony murder closely tracked the language of the Tennessee Pattern Jury Instruction on the subject and the language of the felony-murder statute. T.P.I. (Crim.) § 7.03 (1992); Tenn. Code Ann. § 39-13-202 (1991). The jurors were told that in order to find the defendant guilty of felony murder they would have to find that the defendant unlawfully killed Ms. Beasley in the perpetration of a robbery, that such killing was closely connected to the robbery and not a separate, distinct and independent event, and that the defendant intended to

---

[4]The defendant argues that even if there were proof he was returning for money to purchase cocaine, there was no proof that he intended to take Ms. Beasley's money. In light of the fact that the defendant did, in fact, take Ms. Beasley's money as well as his own, we believe the jury was entitled to give little or no credence to this argument.

[5]It is the taking of Ms. Beasley's cash immediately after the killing, and not the taking of various items of personal property the next day, that brings this killing under the felony-murder rule. The defendant's acts on the day following the killing were too far removed in time for a jury to reasonably infer the existence of intent to steal those items at the time of the killing.

12

commit the robbery. Furthermore, they were instructed that robbery was the knowing or intentional taking of the property of another by the use of violence or by putting the person in fear.

A review of the instructions indicates the jury was fully informed of the elements of the offense of felony murder, including the meaning of the phrase, "in the perpetration of," as it relates to a murder committed in connection with an offense of robbery. The instruction permitted a consideration of whether or not the defendant intended to rob Ms. Beasley at the time he killed her. Defense counsel argued in closing that he did not intend to take the money at the time he killed her. The jury was adequately advised of the law that governed its deliberation. Compare Gaddy, 698 So.2d at 1134; State v. Newman, 605 S.W.2d at 786-87.

Finally, the defendant makes an argument that the only evidence of intent to rob was circumstantial; that is, the fact that he actually took Ms. Beasley's money. He maintains that this evidence is insufficient to prove intent to commit robbery because it did not exclude every reasonable hypothesis except that of his guilt. We disagree.

There was direct evidence of the defendant's intent to take Ms. Beasley's money as well as evidence of the actual taking. That evidence came from the defendant's own confession to the police and later in his testimony at trial. During cross-examination the follow colloquy took place:

> Q. And when you took the money, you knew you were taking the money, didn't you?
>
> A. Yes, sir.
>
> Q. Because that's what you went there for--to get the money?
>
> A. Um-um.
>
> Q. Yeah, it's kind of hard to answer that one, isn't it?

13

A. Yes, sir.

Q. Because you've already lied about it so many times. Right?

A. Well, 'cause--

Q. But you took the money. Right?

A. Yes, sir.

Q. You took her property. Right?

A. Yes, sir.

Q. You stole from her, killed her, and ran?

A. Yes, sir.

In light of those admissions by the defendant, this argument is wholly without merit.

## CONCLUSION

The facts and circumstances of this case support the jury's finding, after adequate instruction as to the law of felony murder, that the defendant killed Karen Beasley in the perpetration of a robbery. The judgments of the trial court and the Court of Criminal Appeals are affirmed, with costs taxed to the State of Tennessee.

_____
WILLIAM M. BARKER, JUSTICE

CONCUR:

Anderson, CJ.
Drowota, Birch, Holder, JJ.