IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

## STATE OF TENNESSEE v. OTIS LEE PRICE

**Direct Appeal from the Circuit Court for Cocke County**
**No. 8413    Ben W. Hooper, II, Judge**

---

**No. E2002-00510-CCA-R3-CD**
**December 23, 2002**

---

A Cocke County jury convicted the Defendant of attempted burglary, and the trial court sentenced the Defendant to three years incarceration. The Defendant now appeals, arguing that insufficient evidence was presented at trial to convict him of attempted burglary. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Amber D. Haas, Assistant Public Defender, Newport, Tennessee, for the appellant, Otis Lee Price.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Ronald C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL BACKGROUND

At trial, Everett Davis testified that he resides in Newport, Tennessee, where he owns a garage that is located near his home. He testified that around 10:30 p.m. on April 5, 2000, he was at home when he saw "a car going up and down the road and turning around." Davis reported that he watched the car, and then he "laid down" for awhile. He recalled that around 11:00 p.m. the car returned and "parked right above the garage." Davis testified that "somebody" then went inside the garage, but by the time Davis was able to get there, the person he had seen had already gone.

Davis testified that around 12:00 a.m., he again saw someone in the garage. He reported that he went to the garage, where he found the Defendant and another man. Davis testified that he "[s]tuck a gun between [the Defendant's] eyes" to stop him from leaving, but he did not shoot at the

Defendant. Davis testified that after he caught the Defendant, he called the police. Davis recalled that when the police arrived, the Defendant was walking down the road.

Davis testified that his garage had a "double sliding door" with a chain and a lock. He maintained that he owned the garage and that he did not give the Defendant permission to go inside the garage. Davis stated that he did not know of anything in the garage that belonged to the Defendant. He stated that the Defendant had broken a chain and bent the lock on a box containing tools. Davis estimated that the cost of repairing the damage caused by the Defendant was about twenty-five dollars.

Davis stated that the Defendant was his former brother-in-law and that he had known him for about ten years. Davis testified that the garage was formerly owned by his father, Swann Davis. According to Davis, his father stored a tractor and tools in the garage. Davis testified that the Defendant had been in the garage before. He stated, "[the Defendant] used to help my daddy on the farm some."

On cross-examination, Davis testified that there were no lights in the garage. He reported that the Defendant was formerly married to his sister, but they had been divorced for about two years. Davis testified that he and the Defendant remained "friendly" and acknowledged that the Defendant had been to his house since the divorce. Davis testified that he initially stopped the Defendant by brandishing a ".22 pistol," but the Defendant walked away when Davis went to call the police. Although Davis stated that there was another man with the Defendant, he could not identify the other man and did not attempt to catch him.

On redirect examination, Davis maintained that he did not give the Defendant or anyone else permission to enter his garage. He also stated that he did not give anyone permission to break the lock and open the door. On recross examination, Davis stated that prior to catching the Defendant, Davis had been in the garage earlier that day or on the previous day to get a hoe.

The Defendant testified that he was formerly married to Everett Davis' sister. He stated that Davis' mother owned a garage near Davis' home and that he had a key to the garage. He reported that on April 5, 2000, he was "above" the garage, but he did not try to enter the garage. The Defendant asserted that he owned a motor and some tools that were stored in the garage.

The Defendant testified that on the night of the offense, he was walking down the road towards his former wife's house when Everett Davis approached him. The Defendant recalled that Davis shined a flashlight in his face and threatened him. According to the Defendant, Davis told him to "get down the damned road." The Defendant testified that he told Davis that he did not want any problems and then started walking down the road. He stated that the only thing he had with him was his coat.

On cross-examination, the Defendant testified that he did not have a key to the garage with him in court, but he stated that it was "either over at the annex or" with his former wife. The trial

court then asked the Defendant if he was in Davis' garage. The Defendant responded that he was "above" the garage, but he maintained that he was not inside the garage on April 5, 2000. He testified that he was not intoxicated on the night he was arrested and that he does not drink alcohol.

On redirect examination, the Defendant testified that his former mother-in-law actually owned the garage. He claimed that she allowed him to go into the garage "all the time" and maintained that she had given him permission to go into the garage at any time. On recross examination, the Defendant stated that he did not cut the chain on the garage door. He also stated that he did not pry open the toolbox.

Following the Defendant's testimony, Everett Davis was recalled to testify. He testified that he found the Defendant inside the garage, and he maintained that the Defendant did not have permission to enter the garage. When asked if the Defendant's former mother-in-law gave the Defendant permission to enter the garage, Davis stated, "She's eighty-three year[s] old; she's not capable of making a decision on her own as far as giving anybody permission to do anything." Davis testified that the garage was formerly owned by his father. He stated that when his father died, the property passed to his mother. However, Davis claimed that he was "in charge" of the property because his mother is incapable of taking care of the property herself. Davis testified that he lives on the property where the garage is located. Davis testified that although the Defendant may have had a key when Davis' father was alive, he was not aware of the Defendant's having a key when the offense occurred. Davis testified that the chain on the door of the garage was broken, and that the door on the toolbox was broken because it had been pried open.

## II. ANALYSIS

The Defendant argues that insufficient evidence was presented at trial to convict him of attempted burglary. Specifically, the Defendant contends that he had a proprietary interest in the building which he allegedly burglarized and that he had permission from the actual owner to enter the building. The Defendant also contends that the prosecution did not prove that he attempted to take anything from the garage. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859.

This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

We conclude that sufficient evidence was presented to convict the Defendant of attempted burglary of a building. Burglary is committed when a person, without the effective consent of the property owner, enters a building with the intent to commit a felony, theft or assault. Tenn. Code Ann. § 39-14-402(a)(1). The criminal attempt of a burglary occurs when one acting with the requisite intent engages in conduct constituting a substantial step toward the commission of the offense. Id. § 39-12-101(a)(3).

A "property owner" is defined as one in lawful possession of the property. Id. § 39-14-401(3). The proof at trial established that Everett Davis' mother, Sue Davis, was the actual owner of the garage in question. Everett Davis testified that because of his mother's age, he had control over the property and was in fact living on the property. No evidence was presented at trial that Everett Davis did not have control over the garage. Everett Davis was in lawful possession of the garage, and thus he was the "property owner" for purposes of our analysis.

Everett Davis testified that around 12:00 a.m. on April 5, 2000, he found the Defendant in his garage. He stated that he detained the Defendant momentarily and then called police. Davis reported that the chain and lock on the door of the garage had been broken and that the latch on a box of tools inside the garage was also broken. Viewing the evidence in a light most favorable to the State, the evidence established that the Defendant entered Davis' garage with the intent to commit a felony and that he took a substantial step towards committing a felony by breaking into the toolbox.

Although the Defendant claimed that he had permission to enter the garage at anytime, he failed to present any proof to substantiate his claim. In addition, the Defendant claimed that he had been given a key to the garage. However, the Defendant was unable to present such a key at trial. We reiterate that issues pertaining to the credibility of the witnesses and the weight to be ascribed to their testimony are matters entrusted to the trier of fact and are not issues for appellate analysis. Liakas, 286 S.W.2d at 859. We conclude that sufficient evidence was presented to the jury to convict the Defendant of attempted burglary. Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE