# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 7, 2004

## STATE OF TENNESSEE v. TYRIE BROWN

**Direct Appeal from the Circuit Court for Franklin County**
**No. 13637      Thomas W. Graham, Judge**

---

**No. M2003-00556-CCA-R3-CD - Filed May 4, 2004**

---

A Franklin County jury convicted the Defendant, Tyrie Brown,[1] of possession with intent to deliver more than 0.5 grams of cocaine, assault and resisting arrest. The trial court sentenced the Defendant to thirteen years for the possession conviction and ninety days on both the assault conviction and the resisting arrest conviction. On appeal, the Defendant contends that the evidence is insufficient to support his convictions. Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, joined.

David O. McGovern, Jasper, Tennessee, for the appellant, Tyrie Brown.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; James Michael Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Factual Background

This case involves the Defendant's arrest on September 9, 2000, for possession with intent to sell or deliver more than 0.5 grams of cocaine, assault and resisting arrest. After a police officer witnessed the Defendant throw a bag of "crack" cocaine on the ground and run away, the police officer pursued the Defendant. Once the police officer caught him, the Defendant hit the police officer in the face and then attempted to escape from the officer. A Franklin County jury convicted the Defendant of the charged offenses, and the trial court sentenced him to thirteen years in prison. The Defendant now appeals.

---

[1]The Defendant's name also appears as "Tyree Brown" in the record.

The following evidence was presented at the Defendant's trial. Danny Mantooth, a narcotics detective with the Winchester Police Department, testified that he received information on September 9, 2000, that the Defendant was in possession of a large quantity of "crack" cocaine. He stated that he contacted Officer Andrew Moore and another officer and told them to go to the corner of Old Cowan Road and Wilson Street to find the Defendant. The detective explained that he gave the officers a detailed description of the Defendant, including his clothing. Detective Mantooth testified that Officer Moore was a member of the Narcotics Department. The detective stated that he also headed toward the location in search of the Defendant.

Detective Mantooth testified that, when he arrived at the corner of Old Cowan Road and Wilson Street, he saw people running and heard on the police radio that Officer Moore was in pursuit of the suspect. The detective stated that he then called for backup. He explained that Officer Jodie Westbrook arrived to assist. Detective Mantooth reported that he did not see the actual apprehension of the Defendant, but he heard Officer Moore shout once or twice, "quit resisting" and "get on the ground." The detective stated that Officer Moore and the Defendant were approximately thirty-five yards away from him when he heard Officer Moore shout at the Defendant.

Detective Mantooth explained that he and the other officers at the scene then secured the area identified by Officer Moore and searched the area. The detective stated that Officers Moore, Anderson and Westbrook helped to search the area. Detective Mantooth reported that Officer Westbrook said something like, "Bingo," when he found what appeared to be a large quantity of "crack" cocaine in three plastic bags at the crime scene. Detective Mantooth testified that he picked up the bags containing what they believed to be "crack" cocaine. Detective Mantooth explained, "I found the three plastic bags tied up in a knot which contained the off-white rock type substance." He stated that he picked up the bags, took them into custody and secured them until he got to the police station.

Andrew Moore, an officer with the Winchester Police Department, testified that he worked as a patrolman on September 9, 2000. He stated that Detective Mantooth told him to go look for the Defendant at the corner of Old Cowan Road and Wilson Street. Officer Moore stated that Detective Mantooth gave him a detailed description of the Defendant including the Defendant's clothing, which was a blue and yellow striped polo-type shirt. Officer Moore testified that he went to the location and parked his patrol car in a ditch. He stated that, when he got out of the vehicle, he saw an individual matching the description provided by Detective Mantooth squatting in front of the strip of trees. The officer stated that he witnessed the Defendant grab a plastic bag and throw it down to the ground. Officer Moore positively identified the Defendant as the individual whom he saw that evening. He explained that he was less than fifty yards from the Defendant when he first saw him.

Officer Moore explained that, at that time, he jumped the ditch and approached the Defendant. He said that, as he approached the Defendant, the Defendant started to flee. The officer stated that he announced he was a police officer and told the Defendant to stop running, but he had to pursue the Defendant on foot. Officer Moore explained that he caught up with the Defendant in between two houses and then tackled the Defendant. The officer stated that a struggle ensued after

he tackled the Defendant. He explained, "We both went down to the ground and at that time he had the advantage, that's when I was struck in the face with a closed fist." Officer Moore said that he kept the Defendant on the ground and held him down until the Defendant tired and ceased struggling. He stated that, after the Defendant stopped struggling, he handcuffed the Defendant, and Officer Anderson then assisted him.

Officer Moore testified that, when the Defendant struck him in the face, he was alarmed. He explained that he was afraid the Defendant might punch him again and that the Defendant might have a weapon or try to take his and use it against him. He stated that, after he had subdued the Defendant, he placed the Defendant in Sergeant Stewart's patrol car and told Officer Anderson that the Defendant had thrown something on the ground near the strip of trees and that they needed to go retrieve it. Officer Moore stated, "We went to the wooded area and we searched in the area that I pointed out[,] and[,] within a matter of minutes[,] Officer Westbrook said, 'Bingo' a term we use when we find something[.] [A]t that time[, Detective] Mantooth was there and picked up the evidence . . . ."

Adam Gray, a forensic scientist with the Tennessee Bureau of Investigation at the Chattanooga Crime Laboratory, testified that he tested the substance delivered by Officer Stewart. Gray testified that, based on the results of three tests, he determined the substance was "crack" cocaine. He stated that the "crack" cocaine obtained from Officer Stewart weighed 73.4 grams.

Pursuant to an agreement between Defense Counsel and the State, the Defendant testified that he had four prior convictions without testifying as to what the convictions were for. He then testified about the events on the evening of September 9, 2000:

I was drinking a bottle of Bacardi [Rum]. I had it in a sack[,] and when I [was] almost finished with it I walked to the edge of the trees to use the rest room[.] [W]hen I got [done] relieving myself and start[ed] pulling up my pants, this one officer . . . jumped out and he smacked [me] with the flashlight and I pulled up my pants[.] I [tried] . . . to block him . . . . I dropped the bottle of Bacardi and I tried to run and he pushed me down. . . .

As soon as I pulled up my pants[,] he smacked me with the flashlight and I turned around to try to see what was going on[.] . . . [T]hen I just heard a bunch of mumbling, stop resisting, halt, and he tried to smack me with the flashlight again and I put my arm up, [and] the flashlight fell[.] I dropped the Bacardi bottle, [and] I tried to run; he pushed me down, [and] he come and just roughed me up.

The Defendant explained that he ran about fifteen to twenty feet. The Defendant stated that he had been drinking on a neighbor's front porch before he went to the tree line to relieve himself. He

explained that he ran back towards her house and was in the front yard, ten to fifteen feet from Old Cowan Road, when he was handcuffed.

The Defendant testified that the area is a high crime area, and he saw many people going back and forth through the woods in the area in which the drugs were found. He stated that, at the time he was arrested, two other people were also being chased by police officers. He explained that the officer who "smacked" him with the flashlight was actually chasing another individual when the officer came across him and hit him. The Defendant said that Officer Moore did not announce himself. The Defendant stated, "He just smacked me with the flashlight and then I struck out running and the he started saying, 'stop resisting, halt,' and he tried to smack me with the flashlight again." The Defendant denied ever hitting the officer. He explained, "The only thing I did was block[] the flashlight." The Defendant testified that the bags of drugs were not his and that he did not throw them to the ground. The Defendant stated that he should have been charged with public intoxication instead of possessing drugs.

Based upon this evidence, the jury convicted the Defendant of possession with intent to sell or deliver more than 0.5 grams of cocaine, assault and resisting arrest. The trial court sentenced the Defendant to thirteen years on the possession conviction and ninety days on both the assault conviction the resisting arrest conviction, to run concurrently with the possession conviction. The Defendant now appeals these convictions.

## II. Analysis

The Defendant contends that the evidence presented at trial was insufficient to support his convictions for possession with intent to deliver more than 0.5 grams of cocaine, assault and resisting arrest. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 324 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the

convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.

### A. Possession with Intent to Deliver

Under Tennessee Code Annotated section 39-17-417(a) (1997), "[i]t is an offense for a defendant to knowingly: (1) Manufacture a controlled substance; (2) Deliver a controlled substance; (3) Sell a controlled substance; or (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance." A person is guilty of possession with intent to deliver cocaine, a Class B felony, "if the amount involved is point five (.5) grams or more of any substance containing cocaine." Tenn. Code Ann. § 39-17-417(c)(1). "Deliver" means "the actual, constructive, or attempted transfer from one person to another of a controlled substance." Tenn. Code Ann. § 39-17-402(6) (1997). To be found guilty of possession with intent to deliver cocaine, the State must prove that the drug was, in fact, cocaine. Tenn. Code Ann. § 39-17-408(b)(4) (1997). The State must also prove intent to deliver the drugs to another, which can be proven through circumstantial evidence. Tenn. Code Ann. § 39-17-417(a)(4).

When viewed in a light most favorable to the State, the evidence shows that Detective Mantooth received information that the Defendant was in possession of a large quantity of crack cocaine and was located near the corner of Old Cowan Road and Wilson Street. He contacted Officer Moore and another officer, who went to the specified location with a detailed description of the Defendant. Officer Moore went to the specified location and saw the Defendant squatting in front of the strip of trees. The officer saw the Defendant throw a plastic bag to the ground and then flee. Officer Moore pursued the Defendant and then tackled him, and the Defendant hit the officer in the face and attempted to escape. After securing the area, Officer Moore told the other officers to look for a plastic bag, and Officer Westbrook found a plastic bag matching Officer Moore's description. Adam Gray, a forensic scientist, testified that the product contained in the plastic bags was "crack" cocaine, a Schedule II drug. The "crack" cocaine weighed 73.4 grams. The Defendant denied possession of the crack cocaine. From this evidence, we conclude that a rational trier of fact could have found that the Defendant was in possession of more than 0.5 grams of "crack" cocaine and that the Defendant intended to deliver that cocaine. Accordingly, a rational jury could have found the essential elements of the crime beyond a reasonable doubt.

### B. Assault

Tennessee Code Annotated section 39-13-101(a) (1997) states that a person commits assault who: "(1) Intentionally, knowingly or recklessly causes bodily injury to another; (2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury; or (3) Intentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." "Bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2).

The evidence shows that, after Officer Moore tackled the Defendant, a struggle ensued. He stated that, "We both went down to the ground and . . . that's when I was struck in the face with a closed fist." Officer Moore testified that when the Defendant struck him in the face, he was alarmed. He explained that he was afraid the Defendant might punch him again and that he was concerned that the Defendant might have a weapon or try to take his and use it against him. The Defendant merely testified that he did not strike Officer Moore. After viewing the evidence in the light most favorable to the State, we conclude that a rational jury could have found the Defendant guilty of assault by finding, beyond a reasonable doubt, that the Defendant did knowingly, intentionally or recklessly strike Officer Moore and that the punch could have reasonably caused the officer to fear imminent bodily injury.

## C. Resisting Arrest

Under Tennessee Code Annotated section 39-16-602(a) (1997), a person commits resisting arrest who "intentionally prevent[s] or obstruct[s] anyone known to the person to be a law enforcement officer . . . from effecting a stop, frisk, halt, arrest or search of any person, including the defendant, by using force against the law enforcement officer or another."

When viewed in the light most favorable to the State, the evidence shows that, as Officer Moore approached the Defendant, the Defendant started to flee. The officer, who was in uniform, announced he was a police officer, but the Defendant did not stop running so the officer had to pursue the Defendant on foot. Officer Moore tackled the Defendant and a struggle ensued. During the struggle, the Defendant struck the officer "in the face with a closed fist." The Defendant attempted to escape from the officer, but the officer eventually subdued the Defendant and handcuffed him. The Defendant testified that the officer "smacked" him with the flashlight and never announced that he was a police officer. The Defendant denied ever hitting the officer. We conclude that a rational jury could have found beyond a reasonable doubt that the Defendant did intentionally attempt to obstruct Officer Moore from effecting his arrest by using force against Officer Moore. Accordingly, we conclude that a rational jury could find the Defendant guilty of resisting arrest beyond a reasonable doubt.

## III. Conclusion

In accordance with the foregoing authorities and reasoning, we conclude that the evidence is sufficient to support the Defendant's convictions. Therefore, the judgments of the trial court are AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE