IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 6, 2005

## STATE OF TENNESSEE v. JORDAN HILL

**Appeal from the Criminal Court for Madison County**
**No. 03-00007   Joseph B. Dailey, Judge**

---

**No. W2005-00248-CCA-R3-CD  - Filed December 16, 2005**

---

The Defendant, Jordan Hill, was convicted of attempted aggravated robbery and of being a felon in the possession of a handgun.  On appeal, he contends that the evidence is insufficient to sustain these convictions.  Finding no reversible error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Garland Ergüden, Memphis, Tennessee, for the Appellant, Jordan Hill.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; Greg Gilbert, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I.  Facts

This case arises out of an attempted aggravated robbery that occurred on March 23, 2002. For this crime, the Defendant was indicted by a Shelby County Grand Jury on one count of attempted aggravated robbery and one count of being a convicted felon in possession of a handgun.  At the Defendant's trial, the following evidence was presented: Terry Thomas testified that, on March 23, 2002, at 8:00 or 8:30 a.m. he was at a store called Lou's market.  He said that he used the phone, and, as he was returning from using the phone, he heard someone calling him by his nickname, "Red." He said that he looked around, and the he saw the Defendant "run up on him."  Thomas testified that the Defendant then pulled out a gun and said, "B****, give me your money" while sticking his hand

1

in Thomas' pocket. Thomas "snatched" the Defendant's hand out of his pocket and opened the door to his car. As he was getting in the car, the Defendant hit him on the bridge of his nose with the gun, breaking his nose. Thomas described the gun as silver and gray and said the gun was "two-toned." He guessed that the gun was an automatic that was either a nine millimeter of forty caliber Glock. Thomas said that the Defendant never got his wallet.

Thomas said that, after the Defendant hit him in he nose with his gun, the Defendant ran and jumped into another car that was a small light brown or gray four-door sedan, like a Chevy Malibu or a Taurus. Thomas said that a woman, Annie Smith, was in his car when he jumped in, and she spotted the police a short distance away. He said that they went to the police and reported what had happened, and the police called an ambulance and treated his nose. Thomas said that he followed the police when they attempted to find the Defendant, and Smith spotted the Defendant standing near his car on a side street. He said that he caught up with the police and told them that he had spotted the Defendant, and they went back to where the Defendant had seen. By the time they got there, the Defendant had gotten back inside his car, and he was sitting in the passenger's seat. Thomas said that the officers then arrested the Defendant and looked under his front seat. They found a gun, and Thomas recognized the gun as the same one that was pointed at him earlier.

On cross-examination, Thomas testified that he parked slanted from the phone when he parked to make a phone call at Lou's market that morning. He said that the person that called his nickname looked like they were across the street, and he turned around. He said that he had never seen he Defendant before, but he waited for him thinking that the Defendant knew him. Thomas was beginning to get back into his car when the Defendant got within one or two feet of him, and the Defendant asked for Thomas' money. Thomas admitted that, in the statement he gave to police on the morning of this incident, he told them that the Defendant approached him before he used the phone, grabbed him and said, "B****, com here," and then hit him with a pistol and attempted to take his wallet. Thomas admitted that he had previously pled guilty to theft of property valued under $500 on April 4, 1997, and he also previously pled guilty to the charge of robbery on January 21, 1994.

On redirect examination, Thomas said that the Defendant was wearing black pants, a gray shirt, and white tennis shoes on the day of this incident. He said that he identified a photograph of the Defendant for police.

Tom Warrick, an officer with the Memphis Police Department, testified that, on March 23, 2002, he was working when he got flagged down at around 8:30 a.m. by the victim of a robbery. He said that the victim, Thomas, told him that he had been robbed, gave him a description of the vehicle and individual involved, and pointed him out from across the street. Officer Warrick said that he and his partner took the Defendant into custody and patted him down. The officer said that the Defendant was sitting in the passenger's seat, and the officer looked in the glove box, which was near where the Defendant was sitting, for a gun. He said that he found a loaded Ruger, automatic, nine millimeter gun in the glove box that was black and silver. Officer Warrick said that Thomas was bleeding pretty profusely from his nose, and his nose looked like it had been broken.

2

On cross-examination, the officer said that there was no one else in the car with the Defendant when he was arrested. He said that the Defendant was sitting in the passenger seat of his car, which was parked in a parking lot across the street form Lou's market. The officer said that, when he took the Defendant into custody, the officer and his partner were the only other people present. Officer Warrick said that he did not call for an ambulance between the time the victim flagged him down and when he apprehended the Defendant.

Kimberly Tanzy, a criminal court clerk, testified that, in 1996, the Defendant pled guilty to the unlawful possession of a controlled substance with the intent to sell or deliver it, which is a felony.

Based upon this evidence, the jury convicted the Defendant of attempted aggravated robbery and of being a felon in possession of a handgun.

## II. Analysis

On appeal, the Defendant asserts that the evidence is insufficient to sustain either of his convictions because they are based upon a sole eyewitness. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P.13(e); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004) (citing State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon the direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. State v. Buggs, 995 S.W.2d 102, 105 (Tenn. 1999); Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956). Questions concerning the credibility of the witnesses, the weight and value of the evidence, and all factual issues raised by the evidence are resolved by the trier of fact. Liakas, 286 S.W.2d at 859. This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. Goodwin, 143 S.W.3d at 775 (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). It is well-settled law in Tennessee that "the testimony of a victim, by itself, is sufficient to support a conviction." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. Id.; see State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000).

To convict the Defendant of aggravated robbery, the State was required to prove that the Defendant "intentionally or knowingly took the property of another by violence of putting the person in fear" and that this was "accomplished with a deadly weapon." Tenn. Code Ann. §§ 39-13-401,-402 (2003). To convict the defendant of the attempted aggravated robbery offenses, the State was required to prove that the defendant:

> (1) intentionally engaged in action or caused a result that would constitute an offense if the circumstances surrounding the conduct were as the person believed them to be; (2) acted with intent to cause a result that is an element of the offense, and believed the conduct will cause the result without further conduct on his part; or (3) acted with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believed them to be, and the conduct constituted a substantial step toward commission of the offense.

Tenn. Code Ann. § 39-12-101 (2003).

In the case under submission, the evidence, when viewed in the light most favorable to the State is sufficient to support the Defendant's conviction for attempted aggravated robbery. The evidence shows that the Defendant approached the victim and asked the victim to give him all of the victim's money. When the victim refused, the Defendant brandished a two-toned silver and gray 9 millimeter gun, and he used that gun to break the victim's nose. The victim saw the Defendant get into a brown or gray four-door sedan, like a Chevy Malibu or a Taurus. The victim flagged down police, who arrested the Defendant while he was sitting in the passenger's seat of a four-door Chevrolet. A brief search for reasons officer safety, revealed a two-toned, black and silver, 9 millimeter gun in the glove box. This evidence is sufficient to sustain the Defendant's conviction for attempted aggravated robbery.

The Defendant also contends that the evidence is insufficient to support his conviction for being a felon in the unlawful possession of a handgun. In order to establish the crime of being a felon in the unlawful possession of a handgun, the State must prove, pursuant to Tennessee Code Annotated section 39-17-1307 (2003), that: (1) the Defendant possessed a handgun; and (2) was previously "convicted of a felony drug offense." Tenn. Code Ann. § 39-17-1307(b)(1)(B). There is no dispute that the Defendant was convicted of possession with intent to sell offer .5 grams of cocaine in 1996, which is a felony. Further, the Defendant was taken into custody while he was sitting in the passenger's side of a car, and the weapon was found in the glove box of that car. Further, the weapons match the description of the weapon that was used by the Defendant in an attempted aggravated robbery a short time prior to his arrest. Accordingly, the evidence is clearly sufficient to sustain the Defendant's conviction. The Defendant is not entitled to relief on this issue.

4

## III.  Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the Defendant's convictions.

_____
ROBERT W. WEDEMEYER, JUDGE