# IN THE SUPREME COURT OF TENNESSEE
# AT NASHVILLE
September 8, 2016 Session, Heard at Knoxville

## STATE OF TENNESSEE v. NICOLE FLOWERS

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Maury County
No. 22821     Robert Lee Holloway, Jr., Circuit Court Judge**

_____

**No. M2014-01744-SC-R11-CD
FILED DECEMBER 30, 2016**

_____

Nicole Flowers ("the defendant") was convicted of the criminal offense of stalking, *see* Tennessee Code Annotated section 39-17-315, based, in part, on her posting disparaging signs about the victim on the victim's private property and on the property of his employer, which was a public place.  We granted this appeal to consider whether the signs placed by the defendant amounted to an exercise of her right to free speech, as protected by the United States and Tennessee Constitutions.  We also consider whether the evidence presented at the bench trial was sufficient to sustain the defendant's conviction.  We conclude, based on the proof in the record on appeal, that the evidence underlying the defendant's conviction for stalking is insufficient to sustain her conviction and therefore reverse the judgment of the Court of Criminal Appeals.  Having determined that the evidence is insufficient, the issue of the defendant's right to free speech is pretermitted.

### Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Gary Howell, Mt. Pleasant, Tennessee (at trial); Travis B. Jones, Assistant District Public Defender (at trial and on appeal); and Brandon E. White, Columbia, Tennessee (on appeal), for the appellant, Nicole Flowers.

Herbert H. Slatery III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Leslie E. Price, Senior Counsel (on appeal); Brent Cooper, District

Attorney General; and Kevin Latta, Assistant District Attorney General (at trial), for the appellee, State of Tennessee.

**OPINION**

I. Facts and Procedural History

This matter involves a conflict between the victim, Jason Dale, and the defendant, with whom the victim had a daughter. The victim and the defendant were never married, and the victim had five other children.

On May 8, 2013, the victim had been employed by the Maury County Board of Education for fifteen years. That morning, he received a call from a coworker at 6:25 a.m., telling him that "[s]omeone has [a] sign on the fence about you." When the victim arrived at work, he observed a sign on the fence and cut it down. The sign read, "Jason Dale is a deadbeat." Two signs had been placed at the victim's workplace; one sign was attached to the fence, and another sign bearing the same message was affixed to the main gate. A third sign had been placed at his residence. That sign read, "Jason Dale is a deadbeat dad, and he works for the Department of Education." His neighbor removed the sign and placed it in a ditch in his yard.

The victim did not see the defendant place any of the signs. However, his neighbor saw the defendant walking down his street. In addition, the defendant had previously called the victim a "deadbeat dad," and no one else had ever called him that except her. For these reasons, he believed that the defendant was responsible for the signs.

When the victim left work that afternoon, he exited through the gate, looked to his right, and saw a vehicle occupied by the defendant and her sister, Priscilla Dawson, parked outside of an abandoned house. When he pulled out, the defendant and Ms. Dawson followed him. Believing that they intended to continue following him, he drove to the sheriff's department. After speaking with a magistrate inside the sheriff's department, the victim followed the necessary procedure to obtain a warrant against the defendant.

The victim explained that he had experienced difficulties with the defendant prior to May 8. She had sent him several text messages calling him a "deadbeat dad" and telling him that he needed to "step up" and "be a father." The victim responded to the defendant via text message and informed her that he did not want to receive any more text messages from her. The victim did not recall whether the defendant had called him

on the telephone. The victim acknowledged that the content of the text messages pertained to their then-fourteen-year-old daughter. Their daughter was a member of the high school marching band's flag corps, and the messages referenced providing her transportation to and from band practices.

When asked if there was anything else that he thought was important for the court to hear, the victim testified:

> No. You know, I don't want my name defamed like that. You know, I wouldn't do my worst enemy like that. You know, this is something that, you know, you don't do nobody like this, or jeopardize a job and everything like that. You know, I wouldn't do that to nobody.

No further instances occurred after May 8.

The State rested its case-in-chief, and counsel for the defendant moved to dismiss the charge against her, citing the lack of testimony that the victim felt emotionally distressed. The trial court denied the motion, reasoning that "when you start putting stuff on someone's business, that *can* lead someone to feel harassed, and reasonably so. That's harassment. And it causes emotional distress concerning their job." (emphasis added). The court characterized the victim's testimony as his being "concerned."

The defendant testified on her own behalf and stated that in May 2013, she was not working and did not have a driver's license. She relied on Ms. Dawson for transportation, and she paid other people to drive her daughter back and forth to band practice. Her daughter first spoke with the victim about taking her to practice, and he told her he would not. That response prompted the defendant to call the victim. However, the defendant was unable to address the issue of transportation because the victim ended the call before she could speak with him about it. The defendant stated, "[O]nce [my daughter] talked to him, and he told her no, I got in touch with him. But I never even mentioned transportation because we didn't get to that point. He hung up."

Prior to placing the call, the defendant sent text messages to the victim. The content of the messages included, "'Step up and be a man for once in your life,' or something to that effect." When her attempt to speak with the victim by telephone proved unsuccessful, she initiated no further contact through texts or telephone calls.

The defendant stated that she painted the signs and hung them during the evening of May 7, 2013. She placed the signs at the victim's place of employment but said that the other sign was placed at what she believed was his grandparents' residence. Prior to this series of contacts, the defendant had not spoken with the victim in three years and did not know where he lived. The defendant and Ms. Dawson knew where the victim's

grandparents lived, but because the victim had gotten married, they did not know where he resided at that time. The defendant chose that specific language for the signs because she was mad at the victim and wanted him to feel "bad." The victim had five other children with whom he had relationships. Their daughter was bothered by his lack of involvement in her life, which caused the defendant to address the issue with the victim.

The defendant acknowledged that she and her sister followed the victim when he left work. Ms. Dawson was driving. The defendant thought that she and the victim could have a "sensible conversation" and "make a schedule" for transporting their daughter to and from band practice. At one point as the defendant followed the victim, they "got beside him to let him know [they] [were] right [t]here." The victim did not say anything, call her, or tell them to stop following him. Ms. Dawson did not swerve toward the victim or take any action that would cause him to fear that she might wreck his vehicle. They did not signal him in any way when they pulled alongside him. As they followed the victim, Ms. Dawson was not "riding his bumper[,] . . . blowing [her] horn[,] [or] doing anything out of the normal." When the victim drove to the sheriff's department, the defendant believed it was so they would be on "neutral ground." However, when she saw him walk in and talk to someone, she "knew it was past that," and they left. The defendant maintained that she was not attempting to frighten, terrorize, or cause the victim emotional distress. She merely wanted to secure transportation for their daughter. The defendant had no further contact with the victim after this incident, and the victim had not called their daughter during that time, either.

The trial court found the defendant guilty. At the hearing on the motion for a new trial, the defendant argued, *inter alia*, that there was no reason to think that her actions would have caused the victim to feel "any of these different adjectives" contained within the statute defining stalking. She also maintained that to the extent her conviction was predicated on the signs that were placed at the board of education, which was public property, her speech was protected by the First Amendment. The trial court denied her motion, stating that the conviction had nothing to do with the content of her speech and that by going to the defendant's place of employment, she intended to harass him and cause problems with his employer.

The defendant's conviction was affirmed by the Court of Criminal Appeals. *State v. Flowers*, No. M2014-01744-CCA-R3-CD, 2015 WL 5676860 (Tenn. Crim. App. Sept. 28, 2015). In this Court, the defendant filed a Tennessee Rule of Appellate Procedure 11 application for permission to appeal, arguing that the court below erred in its ruling. We granted the application to consider whether the defendant's conviction is predicated upon protected speech, thus implicating her First Amendment right to freedom of speech, and to review the sufficiency of the evidence underlying the defendant's conviction.

- 4 -

## II. Analysis

As a dispositive matter, we must first determine whether the evidence presented by the State was sufficient to sustain the defendant's conviction for stalking. *See* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions . . . shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt.").

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citation and internal quotation marks omitted). To obtain relief on a claim of insufficient evidence, the defendant must demonstrate that no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 324. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

On appellate review, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992) (citing *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn. 1978)); *see also Davis*, 354 S.W.3d at 729; *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010). At trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This Court presumes that the trier of fact has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the trier of fact, nor will we re-weigh or re-evaluate the evidence. *State v. Smith*, 436 S.W.3d 751, 764 (Tenn. 2014) (citing *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999)); *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (citing *Bland*, 958 S.W.2d at 659); *Dorantes*, 331 S.W.3d at 379. Because a conviction removes the presumption of innocence that the defendant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the defendant, who must demonstrate to this Court that the evidence is insufficient to support the verdict. *Wagner*, 382 S.W.3d at 297 (citing *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011)).

Tennessee Code Annotated section 39-17-315(a)(4) defines the offense of stalking as

>   a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested[.]

While the statute elucidates several of the terms contained in the definition of stalking, this case specifically requires an examination of the meanings of "harassment" and "emotional distress." "Harassment" refers to "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer emotional distress." Tenn. Code Ann. § 39-17-315(a)(3). "Emotional distress" is defined as "*significant* mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling[.]" *Id.* § 39-17-315(a)(2) (emphasis added).

Thus, assembling the various elements of this statute as relevant to this case, to sustain a conviction for stalking, the State's evidence must demonstrate beyond a reasonable doubt that the defendant engaged in

>   1)    a willful course of conduct;
>
>   2)    involving repeated or continuing harassment of another individual;
>
>   3)    that would cause a reasonable person to suffer emotional distress ["*significant* mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling, and that *actually* causes the victim to suffer "*significant* mental suffering or distress . . . ."]; and
>
>   4)    that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested[.]

*Id.* § 39-17-315(a)(1)-(4) (emphasis added).

This Court has held "that a court reviewing the sufficiency of the evidence must determine whether *each* element of the conviction offense is supported by sufficient

proof. If the proof does not adequately support each and every element, the defendant is entitled to a reversal of the conviction." *Parker*, 350 S.W.3d at 909 (emphasis added). The touchstone of any criminal proceeding, however, is "proof," or evidence. In this case, the evidence fails to establish beyond a reasonable doubt that the victim experienced emotional distress, an element of the offense. Tenn. Code Ann. § 39-17-315(a)(3), (4).

The evidence adduced at the bench trial established that the defendant painted and placed the signs in question during the evening of May 7. She then followed the victim in a vehicle driven by her sister as the victim left his place of employment on May 8, which only ended when the victim drove to the sheriff's department and entered the building. In addition to these acts, the defendant sent various insulting text messages to the victim.

In reviewing the sufficiency of the evidence in this case, we note that the requirement of "harassment," an essential element of the offense, is met by proof of conduct that both *would* cause a reasonable person to suffer significant mental suffering or distress (an objective test) and that *actually* causes *significant* mental suffering or distress (a subjective test). *Id.* § 39-17-315(a)(2)-(4) (emphasis added). We recognize that the potential of job loss could objectively cause one to experience significant mental suffering or distress and that being followed from one's place of employment by a person with whom one had a tumultuous relationship could objectively lend itself to feelings of emotional distress. However, the victim did not testify that he *personally* or *actually* experienced such feelings, which is a subjective assessment and a necessary element of the offense.

To the contrary, the victim testified that he did not want his name "defamed" and that he would not treat his "worst enemy" in this manner. He indicated that the actions taken by defendant could jeopardize his employment. While the trial court surmised that placing disparaging signs at one's place of employment could lead to feelings of harassment and could cause emotional distress, we conclude that the evidence falls short of establishing that the victim subjectively felt significant mental suffering or emotional distress.

We also emphasize that for the same reason, the State's proof of the last element of stalking falls short. The victim offered no testimony that he subjectively and actually felt "terrorized, frightened, intimidated, threatened, harassed, or molested," as required by the statute. *Id.* § 39-17-315(a)(4). Because we find deficient proof with regard to these two elements, a review of the sufficiency of the remaining elements is unnecessary.

Having concluded that the evidence presented by the State is insufficient as a matter of law to sustain the defendant's conviction for stalking, we need not address

whether the messages conveyed by the signs equaled constitutionally protected free speech.

## CONCLUSION

Based upon our review of the record, we conclude that the evidence in this case is insufficient to sustain the defendant's conviction for the criminal offense of stalking. *See* Tenn. Code Ann. § 39-17-315. Our holding pretermits discussion of whether the defendant's conviction violates her First Amendment right to free speech. Accordingly, we conclude that the defendant's conviction of stalking must be vacated. The judgment of the Court of Criminal Appeals is therefore reversed. Costs of this appeal are taxed to the State.

_____
ROGER A. PAGE, JUSTICE