IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 5, 2020

## STATE OF TENNESSEE v. JAMARCUS MILLER

**Appeal from the Criminal Court for Shelby County**
**No. 18-05869        J. Robert Carter, Jr., Judge**

_____

### No. W2019-01701-CCA-R3-CD

_____

Defendant, Jamarcus Miller, was indicted by a Shelby County grand jury for first-degree premeditated murder (Count 1) and first-degree felony murder for a killing in the perpetration of attempted robbery (Count 2). A jury convicted Defendant of the lesser-included offense of second-degree murder in Count 1, and convicted Defendant as charged in Count 2. On appeal, Defendant argues the evidence is insufficient to support his conviction in Count 2. Having reviewed the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ALAN E. GLENN, and D. KELLY THOMAS, JR., JJ., joined.

Phyllis L. Aluko, District Public Defender, and Tony N. Brayton, Assistant Public Defender (on appeal); and Nick Cloud and Tom Williams, Assistant Public Defenders (at trial) for the appellant, Jamarcus Miller.

Herbert H. Slatery III, Attorney General and Reporter; Katherine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### *Background*

On January 6, 2018, Defendant shot the victim, Nicholas Brunetti, at the Cove Apartments in Memphis. On January 30, 2018, Defendant was arrested and given his *Miranda* rights. Defendant waived his right to counsel and provided a written statement

to police. A grand jury indicted Defendant of first-degree, premeditated murder in Count 1, and first-degree felony murder for a killing in perpetration of attempted robbery in Count 2.

## *Evidence at Trial*

The night the victim was shot, the victim drove to the Cove apartment complex in Memphis at about 10:30 p.m. Katlynn Nance thought she heard gunshots and told her boyfriend, Nicholas Benson. Mr. Benson looked out the window and saw nothing. A few minutes later, Ms. Nance and Mr. Benson were alerted by a neighbor that their friend, the victim, had been shot.

Ms. Nance and Mr. Benson left their apartment and found the victim stumbling through the parking lot. Ms. Nance assisted the victim and lay him down on the ground. Mr. Benson knew that the victim carried marijuana in a backpack. Mr. Benson went to the victim's vehicle and retrieved the backpack. Mr. Benson did not realize that he was holding the backpack upside down and the contents of the bag spilled into the parking lot. Mr. Benson took what he believed to be an empty backpack to his apartment.

Tenille Smith, an apartment resident, also heard the gunshots. She saw the victim stumble from his vehicle. Ms. Smith saw another vehicle, later determined to belong to Kaci Calderon, Defendant's co-defendant, leave the parking lot at a high rate of speed. Ms. Smith witnessed Mr. Benson retrieve the backpack from the victim's vehicle after the shooting.

Once the police arrived at the scene, Ms. Nance and Mr. Benson were separated and taken to the police station to give their statements. Ms. Nance knew Ms. Calderon, but did not know Defendant, although she had seen photos of Defendant on Ms. Calderon's social media.

The police recovered 231.1 grams of marijuana from the parking lot that had spilled out of the victim's backpack. Bullet casings and an unspent round were recovered from the victim's vehicle. Police recovered $1025 from the victim.

A surveillance video from the apartment complex showed that Ms. Calderon, Defendant, and the victim each arrived in separate vehicles. Ms. Calderon got into the victim's vehicle and sat in the front passenger seat. After a few minutes, Ms. Calderon exited the vehicle and the victim left. The victim returned a few minutes later. Defendant then "creeped up" behind the passenger side of the victim's vehicle. The victim was shot, put his vehicle in reverse and crashed into a nearby fence. Ms. Calderon and Defendant each left in their respective vehicles without turning on their headlights.

Defendant was arrested on January 30, 2018. After being advised of his *Miranda* rights, Defendant provided police with a formal written statement. Defendant admitted that he shot the victim. Defendant did not know the victim, but Ms. Calderon did. She "set the whole thing up." Ms. Calderon let Defendant know that she was going to purchase some marijuana from the victim, so Defendant went with her to purchase some as well. While Ms. Calderon was in the vehicle with the victim, she learned that the victim had more marijuana and cash with him than expected. In his statement, Defendant stated that:

> The intention was to go buy two ounces of bud. [Ms. Calderon] got in the truck with [the victim]. [Defendant didn't] know what they talked about. [The victim] left to go to the store to get a rillo to smoke. [Ms. Calderon] called [Defendant] and told [Defendant] [the victim] had a whole lot more than what he was supposed to. [Ms. Calderon] also said [the victim] had a lot of money and a gun in the car. Basically it was up to [Defendant] whether to let [Ms. Calderon] make a purchase or to go take everything.

Defendant "walked up to [the victim's] car and [the victim] saw [Defendant's] gun. When [Defendant] got in the door way, [Defendant] put the gun in the car and [the victim] lunged at me and [Defendant] fired." Defendant's statement also provided that the victim and Defendant "tussled for about five seconds over [Defendant's] gun. [Defendant] squeezed the trigger and the gun went off. [Defendant] shot one or two more times as [Defendant] was running away."

Defendant stated that he never had the intention to rob the victim. He only intended to buy marijuana from the victim. Defendant testified at trial that he believed that the victim was reaching for a gun. Defendant testified that he carried a gun for personal protection. His gun stuck out of his jacket pocket and the victim must have seen it. The victim pushed Defendant away from the door and a "bit of tug-of-war" occurred with the gun. Defendant fired a shot and hit the victim in the hand. Defendant's gun jammed, he cleared the chamber, and proceeded to fire more shots. Defendant saw the victim reach under his seat and believed the victim was reaching for a gun. Defendant claimed that the words in his written statement were his words but "[n]ot in the correct order." Defendant claimed that he did not read his statement closely because he was arrested at noon on January 30, 2018, and he reviewed the statement at 3:30 a.m. the following morning. On cross examination, Defendant admitted that he corrected a misspelled word in his written statement.

A jury found Defendant guilty of the lesser-included offense of second degree murder in Count 1 and guilty as charged in Count 2. Defendant filed a motion for a

judgment of acquittal or motion for new trial. The trial court denied the motions. It is from this denial that Defendant now appeals.

## *Analysis*

On appeal, Defendant argues that the evidence is insufficient to justify a rational trier of fact in finding beyond a reasonable doubt that Defendant is guilty of felony murder. The State argues that the evidence is sufficient to support Defendant's conviction for felony murder in perpetration of attempted robbery. We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citing *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *Hanson*, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this Court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." *Wagner*, 382 S.W.3d at 297 (citing *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)).

In order to establish the elements of felony murder, the State is required to prove "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." T.C.A. § 39-13-202(a)(2). "No culpable mental state is required . . . except the intent to commit the enumerated offense or acts." T.C.A. § 39-13-202(b). Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103. As pertinent here, criminal attempt requires proof that a person "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." T.C.A. § 39-12-101(a)(3). Proof of the intention to commit the underlying felony and at what point it existed is a question of fact to be decided by the jury after consideration of all the facts and circumstances. *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999).

Here, the evidence is sufficient to establish that Defendant killed the victim in the perpetration of attempted robbery. Initially, Defendant arrived with Ms. Calderon to purchase marijuana. However, according to Defendant's written statement, Ms. Calderon called him and told him that the victim had more marijuana and cash than expected. Ms. Calderon left it up to Defendant to "let [Ms. Calderon] make a purchase or to go take everything." Surveillance video shows Defendant "creeping up" behind the passenger side of the victim's vehicle. As well, according to Defendant's statement, he put his gun inside the victim's car and a "tug-of-war" ensued. Defendant also admitted to pulling the trigger and shooting the victim, even having to clear a jam in the gun at one point. Although Defendant testified at trial that he did not intend to rob the victim, his written statement and actions during the crime strongly indicate otherwise. The jury is free to review the evidence provided and resolve any conflicts. *Campbell*, 245 S.W.3d at 335. The jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence. *Dorantes*, 331 S.W.3d at 379. This court will not reweigh the evidence or substitute inferences drawn by the jury. *Wagner*, 382 S.W.3d at 297. Accordingly, Defendant is not entitled to relief.

---

THOMAS T. WOODALL, JUDGE