IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 22, 2025

**STATE OF TENNESSEE v. ROBERT L. HALL, JR.**

**Appeal from the Criminal Court for Knox County**
**No. 125105   Steven Wayne Sword, Judge**

_____

**No. E2024-01149-CCA-R3-CD**

_____

A Knox County jury convicted the Defendant, Robert L. Hall, Jr., of one count of possession of cocaine with the intent to manufacture, sell or deliver, two counts of possession of a firearm during the commission of a dangerous felony, two counts of unlawful possession of a weapon, and one count of criminal trespass. The trial court ordered an effective thirty-two-year sentence in the Tennessee Department of Correction. On appeal, the Defendant challenges the sufficiency of the evidence supporting his convictions for felony possession of cocaine and possession of a firearm during the commission of a dangerous felony. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and J. ROSS DYER, J., joined.

Clinton E. Frazier, Knoxville, Tennessee, for the appellant, Robert L. Hall, Jr.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin L. Barker, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta'Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's arrest for criminal trespass and, in a search incident to his arrest, the discovery of cocaine and a gun. A Knox County grand jury indicted the Defendant for one count of possession of cocaine with the intent to manufacture, sell or deliver, two counts of possession of a firearm during the commission of a dangerous felony, two counts of unlawful possession of a weapon, one count of

criminal trespass, one count of misdemeanor possession of marijuana[1], and one count of possession of drug paraphernalia.

At trial, the parties presented the following evidence: Shortly after 4:00 a.m. on February 1, 2023, a female caller requested police assistance with a man loitering outside her apartment dealing narcotics. Knoxville Police Department ("KPD") officer John D. Hopkins responded to the request. The call originated from the Taylor Homes area, a housing complex in a "high crime area." He was familiar with the area due to prior arrests in this location related to drugs, gang activity, and violence.

Officer Hopkins pulled into the first parking lot off the main city street. He saw the Defendant standing in the breezeway near a set of stairs. The Defendant matched the description given by the caller and stood in the area she had described to the 911 operator. Also in that area, Officer Hopkins saw a couple walking toward Officer Hopkins and away from where the Defendant stood. There was one other man walking toward the Defendant who turned and walked the opposite direction as Officer Hopkins approached the area in his patrol car. Officer Hopkins did not believe the Defendant noticed him until he pulled into a parking space directly in front of where the Defendant stood. When the Defendant saw the patrol car, he turned to walk away. Officer Hopkins exited his car and asked the Defendant if he was a resident of Taylor Homes.

The Defendant ignored Officer Hopkins and continued walking. Officer Hopkins told the Defendant to stop. The Defendant responded, "I'm going home. I'm leaving," and continued walking. The Defendant was walking toward a "break" between two buildings and refused to stop after repeated requests to do so. As a result, Officer Hopkins picked up his pace and physically took hold of the Defendant's left arm. Officer Hopkins smelled the strong odor of marijuana on the Defendant. Officer Hopkins described this interaction as "a struggle," but not a fight, as the Defendant tried to put his left hand into his right pocket. Another officer arrived and assisted Officer Hopkins in handcuffing the Defendant.

Once the Defendant was handcuffed, Officer Hopkins requested identifying information from the Defendant, and he provided it. Officer Hopkins "ran" the information and found that the Defendant did not live in Taylor Homes and was on the community trespass list, meaning he was not allowed on the property. Officer Hopkins arrested the Defendant and conducted a search incident to an arrest, revealing crack cocaine, a cell phone, and a loaded Walther .380 semiautomatic weapon. Officer Hopkins weighed the crack cocaine, and the field weight was 3.08 grams. He described this as a "fairly large

---

[1]Upon motion of the State, the trial court dismissed the misdemeanor possession charge before trial.

2

amount of crack cocaine" and an amount consistent with resale. He estimated that the street value for 3.08 grams of crack cocaine was several hundred dollars. In contrast, he noted that drug users typically have one or two "little rocks" and often carry a crack pipe with them for use. Officer Hopkins explained that when the crack pipe was heated, it could cause burn marks on a user's fingers. Officer Hopkins testified that the Defendant did not have any burns on his fingers. During the search, Officer Hopkins also recovered "marijuana blunts/cigarettes" from the Defendant's pocket and a small amount of cash.

Officer Hopkins was wearing a body camera, and his patrol car also contained a recording device. The State introduced three video clips from the car and Officer Hopkins's body camera. The first clip was from the in-car recording device and showed the Defendant's location and the location of the other people in the area consistent with Officer Hopkins's testimony. The second video clip showed the detainment, and Officer Hopkins providing the Defendant's identifying information to the call center consistent with his trial testimony. The final video recording showed the search incident to the arrest and recovery of the items about which Officer Hopkins had testified.

Officer Hopkins, testifying as an expert witness in street-level sales, described for the jury his experience with narcotics investigations generally. He explained that, typically, someone who was a drug addict did not have much, if any, drugs on them. If they had the drug, they used it quickly due to their addiction. Typically, a person selling drugs would have a larger quantity of narcotics and often multiple cell phones. Additionally, drug sellers often carry a weapon to protect their "investment." He stated that drug sellers usually did not carry drug paraphernalia with them because they sold the drugs rather than used the drugs. Officer Hopkins likened the large amount of crack cocaine, and the small amount of cash found on the Defendant to a "grocery store opening the till first thing [in the day]."

Tennessee Bureau of Investigation ("TBI") Special Agent Madison Talley testified as an expert in forensic chemistry. Special Agent Talley analyzed the substance collected from the Defendant and confirmed that it was cocaine and weighed 2.76 grams.

KPD Firearms Examiner Fethany Simmons inspected the gun collected in this case and testified as an expert in firearm examination. The gun was a Walther semiautomatic pistol and .380 caliber. The gun was functional, and no modifications had been made to the gun.

The parties entered a stipulation that the Defendant had a prior felony conviction which prohibited him from lawfully possessing a firearm.

After hearing this evidence, the jury acquitted the Defendant of the possession of drug paraphernalia charge and convicted the Defendant on all the other counts. After a sentencing hearing, the trial court ordered an effective thirty-two-year sentence in the Department of Correction. It is from these judgments that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the evidence is insufficient to support his convictions for felony possession of cocaine and possession of a firearm during the commission of a dangerous felony. He contends that the State failed to show that he intended to sell the cocaine and without the underlying dangerous felony conviction for felony possession of cocaine, there is insufficient evidence for the possession of a firearm conviction. The State responds that there is sufficient evidence for the convictions. We agree with the State.

When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. T. R. A. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In determining the sufficiency of the evidence, this Court should not re-weigh or re-evaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *Id*.

In order to convict the Defendant of possession with intent to sell a Schedule II controlled substance, the State was required to prove beyond a reasonable doubt that the Defendant knowingly possessed "a controlled substance with intent to manufacture, deliver, or sell such controlled substance." T.C.A. 39-17-417(a)(4) (2018). According to Tennessee Code Annotated Section 39-17-419, "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts

surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Thus, the jury can infer an intent to sell or dispense drugs based upon the amount of drugs possessed by the defendant and the absence of drug paraphernalia. *See State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999) (sustaining a conviction for possession with intent to sell after the defendant had been discovered with 1.7 grams of crack cocaine on his person); *State v. Matthews*, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding that testimony about the amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute); *State v. Benson*, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *3 (Tenn. Crim. App. Oct. 8, 2004), *perm. app. denied* (Tenn. May 23, 2005) (determining that the absence of drug paraphernalia, and testimony of value and amount of 3.3 grams of cocaine provided sufficient evidence for jury to draw an inference of defendant's intent to sell and deliver a controlled substance); *State v. Cartwright*, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, at *4 (Tenn. Crim. App. May 10, 2004), *no perm. app. filed* (holding that the testimony about the large volume and street value of 25.5 grams of cocaine, the typical dosages for addicts, and the absence of drug paraphernalia was sufficient to support an inference and conviction of intent to deliver).

The evidence presented at trial, viewed in the light most favorable to the State, was sufficient for a rational jury to find that the Defendant was in possession of cocaine with the intent to sell and that the Defendant possessed a gun. At trial, the evidence showed that a caller requested assistance with a man selling narcotics outside her apartment at 4:00 a.m. When Officer Hopkins reported to the area he saw the Defendant, who matched the caller's description of the suspect. The Defendant was also in the location identified by the caller. When Officer Hopkins attempted to speak with the Defendant, he walked away. Officer Hopkins detained the Defendant, learned that he was on the community trespass list, and arrested the Defendant for criminal trespass. In a search incident to the arrest, Officer Hopkins recovered 2.87 grams of cocaine and a gun.

From these circumstances, a reasonable jury could infer that the Defendant intended to sell cocaine based on the "substantial amount" of the drug found in his possession, the Defendant's possession of a gun, and the testimony that the officer did not find any drug paraphernalia. The sequence of events, the Defendant's suspicious behavior, the substantial amount of cocaine, the gun, and the lack of drug paraphernalia provide sufficient evidence to sustain a guilty verdict for possession of cocaine with intent to sell or deliver and possession of a firearm with the intent to go armed during the commission of a dangerous felony. Thus, the Defendant is not entitled to relief.

**II. Conclusion**

5

In accordance with the aforementioned reasoning and authorities, we affirm the trial court's judgments.


_____s/ *ROBERT W. WEDEMEYER*_____
ROBERT W. WEDEMEYER, JUDGE